UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DWIGHT MORROW HENLEY,

        Plaintiff,                    Case No. 1:11-cv-538

v.                                              Honorable Robert J. Jonker

C. MILLER et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.[1] 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Niemiec, Schafer, Duncan and McKeon. The Court will direct service of the complaint against Defendants Miller, Bynes, Gilbert and Lafler.

---

[1] Because Plaintiff has paid the filing fee, 28 U.S.C. § 1915(e)(2) does not apply.

**Factual Allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) and is housed at the Lakeside Correctional Facility (LCF). He sues the following employees of the Carson City Correctional Facility (DRF): Residential Unit Manager (RUM) C. Miller, Assistant Resident Unit Supervisor (ARUS) J. Niemiec, Administrative Assistant D. Schafer, Warden Blaine Lafler, Grievance Coordinator S. Duncan, and Transfer Coordinator C. Bynes. Plaintiff also sues the following employees of the MDOC: Central Facility Administrator R. Gilbert and former Director Richard McKeon.

In January of 2011, Plaintiff was housed at DRF where he held a prison job that paid $3.34 per day, he was placed in a two-man cell, he received weekly visits from his mother, and he resided "close" to his attorney. (Compl. at ¶ 22, docket #1, Page ID#4.)

On January 13, 2011, Plaintiff told his unit manager, Defendant Miller, that she and other MDOC staff were violating MDOC policies related to "control of MRSA and prisoner orientation." (Compl. at ¶ 23, Page ID#4.) In response, Miller asked Plaintiff to prepare a list of the violations. Plaintiff prepared the list and presented it to Miller the following day. Plaintiff also sent the list to Warden Lafler and Administrative Assistant Schafer.

In the list, Plaintiff asserted that: (1) prison staff do not orient prisoners within seven days upon arrival, as required by MDOC Policy Directive 04.01.140(B); (2) prisoners at DRF do not receive classification via a committee as required by Policy Directive 05.01.100(E); (3) staff do not re-coat or reissue pillows or mattresses with chaffed "staph-chek" coating, in violation of "Policy Direction 03.04.100 BCHS (Attachment 7)"; (4) DRF charges the prison benefit fund for the use of a postage meter, in violation of Policy Directive 04.02.110; (5) Level II prisoners who eat dinner first

- 2 -

are served breakfast last the following morning, meaning they must wait longer than fourteen hours between meals, in violation of Policy Directive 04.07.100(H); (6) the DRF chaplain improperly interrogates Jewish prisoners who seek acceptance into the Kosher food line, which is a form of "paternalism" and discrimination based on religion; (7) Plaintiff's unit is "always running short of cleaning supplies" and was at that time out of "soft scrub," requiring staff to "dilute the sanitizer beyond recommended use" and thereby increasing the risk of dissemination of disease; (8) prisoners are not always afforded twenty minutes to eat their meals, in violation of ACA regulations incorporated by Policy Directive 03.03.130(B); (9) DRF does not provide replacement fans when prisoners' fans break, in violation of Policy Directive 04.07.100; and (10) prisoners sleeping on a top bunk are given unsturdy, plastic chairs to access the top bunk, in violation of Policy Directive 03.03.130(K). (Compl., Ex. 4, Page ID#21.)

When Plaintiff gave Miller the list, she told Plaintiff that if he pursued grievances about the alleged policy violations, "he would find himself at a less desirable prison." (Compl. at ¶ 28, Page ID#5.) Plaintiff responded that transferring him for writing grievances would violate his constitutional rights. Miller told Plaintiff that "courts never side with prisoners." (*Id.* at ¶ 30.) Prisoner DeLoach overheard Miller's statements.

From January 17 to January 23, 2011, Plaintiff wrote a series of prison grievances, including one regarding Miller's allegedly threatening statements, and five others regarding specific violations of MDOC policy described in the list presented to Miller. Defendants Niemiec and

Duncan rejected the five policy-related grievances as "non-grievable."[2] (Compl., Exs. 6-10, Page ID##25-29.)

On January 25, 2011, Plaintiff was transferred to LCF. Transfer Coordinator Bynes and Warden Lafler signed the transfer order and CFA Gilbert approved it. (Compl., Ex. 11, Page ID#30.)

On or around January 28, 2011, Plaintiff filed a grievance alleging that Miller retaliated against Plaintiff by having him transferred to another facility. (Compl., Ex. 2, Page ID#13.) Defendant Niemiec rejected the grievance as duplicative. (*Id.*)

On February 1, Miller told prisoner Stanley Williams that Plaintiff was transferred to LCF for writing grievances.

On February 2, the Grievance Coordinator at LCF notified Plaintiff that he was being placed on modified grievance access[3] for a period of ninety days commencing on January 28, 2011.

On February 3, Plaintiff mailed the list of policy violations to MDOC Director McKeon.

Plaintiff asserts that he received perfect work reports prior to his transfer, that he has had only one misconduct in ten years, and that many prisoners who remain ticket free and maintain excellent work reports are allowed to remain at DRF for many years. Plaintiff alleges that the

---

[2] The grievance regarding Miller's statements was addressed by an official that is not named in the complaint. (*See* Compl., Ex. 1, Page ID#10.)

[3] Modified grievance access means that a prisoner must obtain grievance forms from the Step I Grievance Coordinator. The coordinator provides the form only after confirming that "the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in [the grievance] policy." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ KK (eff. July 9, 2009). Prisoners can be placed on modified grievance access for, among other things, filing "an excessive number of grievances which are vague, duplicative, [or] raise non-grievable issues[.]" *Id.* at ¶ HH.

transfer has had several negative effects.  First, he has been moved from a two-person cell at DRF to an eight-man cube at LCF.  He contends that cube settings are noisy and that he struggles to concentrate, engage in educational activities, and obtain more than six hours of sleep per night.  In addition, Plaintiff lost a high-paying prison job and it will take him some time to find another job with an equivalent salary.  He alleges that his loss of wages hinders his ability to "continue his college education, pay an attorney, purchase food and clothing, call family/friends, and/or more." (Compl. ¶ 54.)  Finally, Plaintiff alleges that he is now incarcerated farther away from his mother, who must travel an additional twenty-five minutes to visit him.

Plaintiff seeks compensatory and punitive damages as well as injunctive relief.

## Discussion

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949

(quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff contends that Defendants transferred him to another prison facility in retaliation for filing prison grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d

1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### A. Defendants Niemiec, Schafer, Duncan and McKeon

Plaintiff fails to state a claim against Defendants Niemiec, Schafer, Duncan and McKeon because he does not allege that they had any role in his transfer, or that they otherwise violated his rights. Where a person is named as a defendant without an allegation of specific conduct, the claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Plaintiff alleges that Schafer and McKeon received notice from Plaintiff of the alleged violations of prison policy, and that Defendants Niemiec and Duncan denied Plaintiff's grievances regarding the policy violations. Section 1983 liability may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948.

Moreover, to the extent Plaintiff sues Defendants Niemiec, Schafer, Duncan or McKeon solely because of any supervisory authority they might have had over other Defendants, his claims against them must fail because government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

### B. Defendants Miller, Bynes, Gilbert and Lafler

With respect to Defendants Miller, Bynes, Gilbert and Lafler, Plaintiff's allegations suffice to state a retaliation claim. Miller threatened that Plaintiff would be transferred for pursuing grievances regarding prison policy violations. Shortly after Plaintiff pursued such grievances, Defendants Bynes, Gilbert and Lafler approved a transfer order, and then Miller reported that Plaintiff was transferred for filing grievances. As a result of the transfer, Plaintiff suffered several negative consequences, including the loss of a high-paying prison job that he needs to pay for an attorney. At this stage of the proceedings, the Court concludes that Plaintiff's allegations against Defendants Miller, Bynes, Gilbert and Lafler are sufficient to warrant service of the complaint.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Niemiec, Schafer, Duncan and McKeon will be dismissed for

failure to state a claim pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).  The Court will order service of the complaint against Defendants Miller, Bynes, Gilbert and Lafler.


Dated:     November 23, 2011            /s/ Robert J. Jonker
                                                               ROBERT J. JONKER
                                                               UNITED STATES DISTRICT JUDGE